UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                        :

CRISTIAN ALEXIS LOPEZ GREGORIO,     :

                            Petitioner,     :

             -v-                   :          25 Civ. 4145 (JPC)

TODD LYONS, *et al.*,               :          <u>OPINION AND ORDER</u>

                       Respondents.     :

------------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

On April 3, 2026, Petitioner Cristian Alexis Lopez Gregorio ("Gregorio"), a citizen of Guatemala who unlawfully crossed the Texas border about five years earlier, was arrested in Putnam County, New York, on two counts of first degree rape and one count of resisting arrest. After learning of Gregorio's arrest and unlawful presence in the United States, U.S. Immigration and Customs Enforcement ("ICE") found probable cause that Gregorio was removable, issued a warrant, and took him into federal immigration custody. The following day, ICE determined that Gregorio's continued detention was appropriate on danger to the community grounds. Gregorio remains in immigration detention, with removal proceedings pending.

Before this Court is Gregorio's Petition for a Writ of Habeas Corpus ("Petition"), which argues that his detention in immigration custody violates the United States Constitution as well as the Immigration and Nationality Act ("INA") and its implementing regulations. For reasons explained below, the Petition is denied.

## I. Background

Gregorio initiated this action on May 18, 2026, by filing the Petition against Todd Lyons, then the Acting Director of ICE, and Ken Genalo, then the Director of ICE's New York City Field

Office for Enforcement and Removal Operations (collectively, "Respondents").  Dkt. 1 ("Petition").  The Petition states that Gregorio is a native and citizen of Guatemala who "entered the United States without inspection on or about April 8, 2021, and was issued a Notice to Appear at the time of entry."  *Id.* at 3.[1]  According to the Petition, Gregorio since "has pursued lawful immigration relief" and now "resides with his family in Brewster, New York."  *Id.*

Gregorio contends that, on "April 3, 2026, at approximately 4:00 p.m., [he] was arrested by local law enforcement in Carmel, New York," and thereafter was arraigned and "held at the Putnam Correctional Facility."  *Id.* at 3-4.  Then, when Gregorio's "family went to post bail so that he could be released from local criminal custody, [ICE] arrested him instead."  *Id.* at 4.[2]  Gregorio further alleges, "[o]n information and belief," that "ICE took him into custody without first serving or producing an immigration warrant, without providing a lawful custody determination, and without giving him any meaningful opportunity to be heard."  *Id.*  Gregorio also asserts that "[t]he ICE agents did not present a valid charging instrument," and "[a]fter they arrested and handcuffed Gregorio, [the] ICE agents interrogated him about his pedigree, national origin, and immigration status."  *Id.* at 4-5.

According to the Petition, Gregorio "was given no prior notice that he would be arrested nor an opportunity to be heard on ICE's decision to detain him."  *Id.* at 5.  Additionally, he asserts that the Department of Homeland Security ("DHS") "is now incarcerating him indefinitely without an individualized custody determination."  *Id.*  In other words, Gregorio claims that he is being

---

[1] The paragraphs of the Petition are inconsistently numbered, with the paragraph numbering restarting on page 3 of the Petition.  For that reason, the Court herein cites to the page numbers of the Petition.

[2] Although this section of the Petition suggests that Gregorio was detained by ICE at the "Putnam Correctional Facility," which makes sense given his allegation that he had just been arrested in Putnam County and was detained at that facility when ICE took him into immigration custody, the Petition elsewhere states that Gregorio was arrested by ICE "on the street," Petition at 5; *accord id.* at 27, 29, 31 (same).

detained without bail even though no decision has been made that he must be detained "based on danger [to the community] or flight risk." *Id.* at 24.  Gregorio speculates that "DHS will likely produce an after-created arrest warrant and claim the arrest was based on it," but argues that such warrant will have been "generated after the arrest and was not previously issued or approved through the chain of command." *Id.* at 21.

Based on these facts, Gregorio brings four sets of claims challenging his detention.  First, Gregorio argues that if Respondents are detaining him under 8 U.S.C. § 1225(b)(2), his arrest and detention violate the Fourth Amendment, the Fifth Amendment, and the INA.  *Id.* at 22-26 (Claim One).  Second, Gregorio argues that if Respondents are detaining him under 8 U.S.C. § 1231, his arrest and detention violate the Fourth Amendment, the Fifth Amendment, and the INA.  *Id.* at 26-27 (Claim Two).  Third, Gregorio argues that his warrantless seizure and detention without an individualized custody determination violate the Fourth Amendment, the Fifth Amendment, the INA, and the regulations implementing the INA.  *Id.* at 27-32, 35-41 (Claims Three, Five, and Six).[3]  Fourth, Gregorio argues that he is entitled to attorneys' fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.  *Id.* at 41-42 (Claim Seven).[4]

On the same day that Gregorio filed the Petition, he moved for a temporary restraining order ("TRO") "[p]rohibiting Respondents from transferring [him] outside this District absent further order of this Court."  Dkt. 2 at 6.  On May 19, 2026, the Court denied Gregorio's motion

---

[3] After Gregorio's fifth claim for relief, the Petition titles Gregorio's sixth claim for relief as "Claim Four" and his seventh claim as "Claim Five."  For purposes of this Opinion and Order, the Court overlooks these typographical errors and treats the second "Claim Four" in the Petition as "Claim Six" and the second "Claim Five" as "Claim Seven."

[4] In his correctly numbered "Claim Four," Gregorio argues that he "cannot be required to seek a bond hearing from DHS before filing this Petition if doing so would be futile."  Petition at 32-35 (capitalization and emphasis removed).  This argument is not a separate claim for relief, but rather an argument that "[e]xhaustion is [e]xcused."  *Id.* at 35 (Claim Four heading).  Since the Court does not resolve this case on exhaustion grounds, it need not reach this issue.

for a TRO, explaining that "when a habeas petitioner 'files a petition naming [his] immediate custodian, the District Court retains jurisdiction' to rule on the petition notwithstanding any subsequent transfer." Dkt. 4 at 1 (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004)). In the Order denying Gregorio's motion, the Court directed Respondents to respond to the Petition by May 29, 2026, and allowed Gregorio to submit a reply in support of the Petition by June 5, 2026. *Id.* at 2. On May 29, 2026, Respondents opposed the Petition, filing a memorandum of law and a declaration from Deportation Officer Dmitry Rousseau. Dkts. 8 ("Rousseau Decl."), 9. Respondents also submitted a Return to the Petition, which attached multiple exhibits relating to Gregorio's arrest, custody, and immigration proceedings. Dkt. 11 ("Return").[5] Gregorio, however, has not submitted a reply in support of the Petition.[6]

Respondents' evidence in support of their opposition provides further details regarding Gregorio's presence in the United States prior to his arrest in April 2026. On or about April 18, 2021, Gregorio unlawfully entered the United States at Hidalgo, Texas, without inspection. Rousseau Decl. ¶ 5. The following day, he was taken into custody by U.S. Border Patrol officers and served with a Notice to Appear charging him with inadmissibility as an alien present in the United States without inspection, or who arrived in the United States at a time or place other than as designated by the Attorney General. *Id.* ¶ 6; *see* 8 U.S.C. § 1182(a)(6)(A)(i). Two days later, on April 21, 2021, Gregorio was released from immigration custody for humanitarian reasons. Rousseau Decl. ¶ 8. Then, on October 3, 2022, U.S. Citizenship and Immigration Services granted

---

[5] On May 29, 2026, Respondents initially submitted a Return to the Petition which appeared to relate to a separate habeas proceeding with a different petitioner. *See* Dkt. 7. The Court pointed out this error, Dkt. 10, and on June 17, 2026, Respondents filed a corrected Return, Dkt. 11.

[6] On June 17, 2026, the Court *sua sponte* extended Gregorio's deadline to submit a reply in support of the Petition until June 22, 2026. Dkt. 10. That deadline has passed without Gregorio filing a reply.

Gregorio's Petition for Amerasian, Widow(er), or Special Immigrant. *Id.* ¶ 9.

As compared to the allegations in the Petition, Respondents' evidence paints a very different picture of the circumstances of Gregorio's arrest and detention by ICE. On April 3, 2026, the Putnam County Sheriff's Office arrested Gregorio on two counts of rape in the first degree, N.Y. Penal L. § 130.35(1), and one count of resisting arrest, *id.* § 205.30. Rousseau Decl. ¶ 10; Return, Exh. B (Federal Bureau of Investigation Identity History Report) at 5; *see* Return, Exh. C (Putnam County Sheriff's Office Facebook Post, dated April 9, 2026). As of the date of Officer Rousseau's declaration (May 29, 2026), those criminal charges remained pending. Rousseau Decl. ¶ 11 (explaining that based on information from the Putnam County District Attorney's Office, Gregorio had a court appearance in his criminal case scheduled for June 8, 2026); *see also* Return, Exh. A ("Record of Deportable/Inadmissible Alien") at 2 (stating that the state charges were pending as of April 5, 2026).

On April 5, 2026, the Putnam County Sheriff's Office notified ICE of Gregorio's arrest, at which point ICE lodged an immigration detainer with the Sheriff's Office. Rousseau Decl. ¶ 12; Record of Deportable/Inadmissible Alien at 2. Then, on May 18, 2026, Supervisory Detention and Deportation Officer Timothy Nevin determined that there was probable cause to believe that Gregorio was removable from the United States, and issued a Form I-200 warrant for his arrest. Rousseau Decl. ¶ 13; *see* Return, Exh. D ("Warrant"). Later that day, at approximately 11:00 a.m., ICE officers arrested Gregorio at the Putnam County Jail pursuant to that warrant and Section 236(a) of the INA, 8 U.S.C. § 1226(a). Rousseau Decl. ¶ 14; Record of Deportable/Inadmissible Alien at 3. The officers confirmed Gregorio's identity, personally served him with the warrant, and read its contents to him in Spanish before transporting him to an ICE detention facility in Newburgh, New York. Rousseau Decl. ¶ 14; *see* Warrant.

After arriving at the Newburgh ICE facility, Gregorio was served with a Notice to Appear

(the "NTA"), charging him as removable under 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled, and under 8 U.S.C. § 1182(a)(7)(A)(i)(I), as an immigrant not in possession of a valid entry document.  Rousseau Decl. ¶ 15; *see* Return, Exh. E ("NTA") at 1, 4.  On May 18, 2026, the same day that Gregorio was transported to the Newburgh ICE facility, Gregorio was again transferred to the Orange County Jail in Goshen, New York, where he remained detained as of Officer Rousseau's declaration.  Rousseau Decl. ¶ 16.

The next day, May 19, 2026, Officer Nevin conducted an individualized initial custody determination and concluded that Gregorio should be detained because he did not establish that he "does not pose a danger to persons or property."  Rousseau Decl. ¶ 17; Return, Exh. F ("Notice of Custody Determination") at 2-3.  In support of that determination, Officer Nevin cited Gregorio's pending criminal charges for two counts of felony rape, as well as for resisting arrest.  *Id.* at 2. Gregorio was then personally served with a Form I-286 Notice of Custody Determination, and the contents of that determination were read to him in Spanish, including his right to seek review of the custody determination by an immigration judge.  Rousseau Decl. ¶ 18; Notice of Custody Determination at 1.  Although Gregorio checked a box which seemingly indicated that he requested immigration judge review of the custody determination, he refused to sign the form.  Rousseau Decl. ¶ 18; Notice of Custody Determination at 1.  On May 19, 2026, ICE filed Gregorio's NTA with the Executive Office for Immigration Review, thereby commencing removal proceedings. Rousseau Decl. ¶ 19.

## II.  Legal Standard

Under 28 U.S.C. § 2241, a district court may grant a writ of habeas corpus to any person "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  A petitioner requesting such a writ "bears the burden of proving that he is being held contrary to law," and he "must satisfy his burden of proof by a preponderance of the evidence."

*Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011) (internal quotation marks omitted); *accord Walker v. Johnston*, 312 U.S. 275, 286 (1941) (explaining that a habeas petitioner bears "the burden of sustaining his allegations by a preponderance of evidence").

When a court orders a respondent to a Section 2241 petition to respond, he must file a return "certify[ing] the true cause of the detention." 28 U.S.C. § 2243. The petitioner then "may, under oath, deny any of the facts set forth in the return or allege any other material facts." *Id.* But where the petitioner does not do so, as is the case here, "[t]he allegations of a return to the writ of habeas corpus . . . shall be accepted as true except to the extent that the judge finds from the evidence that they are not true." 28 U.S.C. § 2248. In other words, the allegations in a petition do not carry a petitioner's burden in the face of documentary evidence to the contrary provided by the respondent. *See Machibroda v. United States*, 368 U.S. 487, 495 (1962) (explaining that a district court need not credit a petitioner's "palpably incredible" allegations); *Skaftouros*, 667 F.3d at 162 (concluding that a petitioner failed to carry his burden where his claim rested on an averment "lacking any indicia of reliability"); *cf. Pham v. United States*, 317 F.3d 178, 184 (2d Cir. 2003) ("Our precedent disapproves of summary dismissal of petitions where factual issues exist[], but it permits a middle road of deciding disputed facts on the basis of written submissions." (internal quotation marks omitted)).

## III. Discussion

Each of Gregorio's claims fails in light of the evidence submitted by Respondents in their Return and the declaration of Officer Rousseau. As an initial matter, Gregorio's first and second claims can be straightforwardly denied because those claims assume that Gregorio is detained under 8 U.S.C. § 1225(b)(2) and 8 U.S.C. § 1231, respectively, Petition at 22-27, when in fact Gregorio is detained under 8 U.S.C. § 1226(a), *see* Rousseau Decl. ¶ 14; Record of Deportable/Inadmissible Alien at 3.

Additionally, Gregorio's third, fifth, and sixth claims each fail because, despite the speculation in the Petition, Respondents' Return and supporting evidence demonstrate that Gregorio was taken into immigration custody pursuant to a warrant and was afforded an individualized initial custody determination. On May 18, 2026, Officer Nevin issued a Form I-200 warrant for Gregorio's arrest. Rousseau Decl. ¶ 13; *see* Warrant.[7] Officers later confirmed Gregorio's identity, personally served him with that warrant, and read its contents to him in Spanish. Rousseau Decl. ¶ 14; *see* Warrant. Then, after transporting Gregorio to an ICE holding facility, Gregorio was served with the NTA charging him as removable under 8 U.S.C. § 1182(a)(6)(A)(i) as an alien present in the United States without being admitted or paroled, and under 8 U.S.C. § 1182(a)(7)(A)(i)(I) as an immigrant not in possession of a valid entry document. Rousseau Decl. ¶ 15; *see* NTA at 1, 4. The next day, ICE conducted an individualized initial custody determination and concluded that Gregorio did not establish that he does not pose a danger to the public, in light of his pending rape and resisting arrest charges, and thus should be detained. Rousseau Decl. ¶ 17; Notice of Custody Determination at 2-3. Gregorio was then personally served with a Form I-286 Notice of Custody Determination, and the contents of that determination were read to him in Spanish, including his right to seek review of the custody determination by an immigration judge. Rousseau Decl. ¶ 18; Notice of Custody Determination at 1. Gregorio has not come forward with any evidence contesting Respondents' Return and evidence. Thus, the third, fifth, and sixth claims of the Petition—all of which rest on the assumptions that Gregorio was seized without a warrant and detained without an individualized custody determination—are

---

[7] Although the Petition speculates that any warrant produced by DHS would be "generated after the arrest and . . . not previously issued or approved through the chain of command," Petition at 21, the evidence submitted by Respondents shows that not to have been the case, *see* Rousseau Decl. ¶¶ 13-14 (explaining that Officer Nevin "issued a Form I-200, Warrant for the Arrest of Alien" and "[l]ater that same day, ICE officers arrested Petitioner at the Putnam County Jail").

without merit.

Finally, Gregorio's seventh claim for attorneys' fees under EAJA fails because that statute permits an award of attorneys' fees only to the "prevailing party." 28 U.S.C. § 2412(b). Because the Court dismisses the substantive claims of the Petition, Gregorio is not a prevailing party and thus not entitled to fees under EAJA.

The Court notes that this is not the first case in which Gregorio's counsel, S. Michael Musa-Obregon, has filed a petition for habeas relief that appears to be "filled with . . . false factual assertions." *Tambriz v. Blanche*, No. 26 Civ. 4247 (JMF), 2026 WL 1662129, at *2 (S.D.N.Y. June 9, 2026). In *Tuba Pulla v. Lyons*, Judge Vyskocil determined that Mr. Musa-Obregon had "expos[ed] himself to the possibility of sanctions under Federal Rule of Civil Procedure 11(b)(3)" when he falsely represented that the petitioner in that case was being subjected to ankle monitoring. No. 26 Civ. 2682 (MKV), 2026 WL 906251, at *1 (S.D.N.Y. Apr. 1, 2026). Similarly, in *Tambriz*, Mr. Musa-Obregon falsely represented that the petitioner had been seized at his job, that the arresting officers did not identify the statutory basis for his arrest, and that the respondents were asserting that the petitioner was not entitled to a hearing, which led Judge Furman to warn counsel "that failure to do better in the future may result in sanctions." 2026 WL 1662129, at *2.

This case now marks at least the third time that Mr. Musa-Obregon has filed a Petition in this District that appears to have contained demonstrably false factual assertions. Even more troubling, Mr. Musa-Obregon has continued to stand behind such false assertions even after being admonished sternly by Judges Furman and Vyskocil. At this point, sanctions may be warranted. Within two weeks of this Opinion and Order, Mr. Musa-Obregon must show cause why this Court should not impose monetary sanctions on him pursuant to Federal Rule of Civil Procedure 11(b) or this Court's inherent authority.

## IV.  Conclusion

For the above reasons, Gregorio's Petition for a Writ of Habeas Corpus is denied.  Within two weeks of this Opinion and Order, S. Michael Musa-Obregon must show cause in writing why the Court should not impose monetary sanctions on him for filing and maintaining the Petition with false assertions of fact.  After reviewing that written submission, the Court will determine whether a hearing on sanctions is necessary.  The Clerk of Court is respectfully directed to enter judgment in favor of Respondents and to close this case.

SO ORDERED.

Dated:  July 21, 2026
      New York, New York

                    JOHN P. CRONAN
               United States District Judge