UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| CRISTIAN ALEXIS LOPEZ GREGORIO, Petitioner, -v- TODD LYONS, *et al.*, Respondents. | : | 26 Civ. 4145 (JPC) OPINION AND ORDER |

JOHN P. CRONAN, United States District Judge:

In an Opinion and Order filed on July 21, 2026, the Court denied Petitioner Cristian Alexis Lopez Gregorio's Emergency Petition for a Writ of Habeas Corpus. *Gregorio v. Lyons*, No. 26 Civ. 4145 (JPC), 2026 WL 2110876 (S.D.N.Y. July 21, 2026). Gregorio's counsel, Mr. Musa-Obregon, verified that the statements made in that 197-paragraph Petition were true and correct to the best of his knowledge. Dkt. 1 ("Petition") at 43-44. But the Court observed that the Petition appeared to contain multiple false factual assertions. Most notably, the Petition rested on the premise that U.S. Immigration and Customs Enforcement ("ICE") detained Gregorio without a warrant while the evidence demonstrated that he "was taken into immigration custody pursuant to a warrant." *Gregorio*, 2026 WL 2110876, at *4. There were also other factual issues, including several assertions "that Gregorio was arrested by ICE 'on the street'" even though he was in fact "detained by ICE at the 'Putnam Correctional Facility'" where he had been detained on state charges. *Id.* at *1 n.2. This was "at least the third time that Mr. Musa-Obregon has filed a Petition in this District that appears to have contained demonstrably false factual assertions." *Id.* at *5 (collecting cases). Accordingly, the Court ordered counsel to "show cause why this Court should not impose monetary sanctions on him pursuant to Federal Rule of Civil Procedure 11(b) or this

Court's inherent authority." *Id.* Counsel responded on August 5, 2026, Dkt. 15 ("Response"), and attached a declaration from Gregorio, Dkt. 15-1 ("Gregorio Decl."). For the reasons that follow, the Court declines to impose sanctions.

Rule 11 requires every attorney submitting a paper to the court to have a good-faith basis for the allegations presented in it. By presenting a paper to the court, a person "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," among other things, "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). A lawyer who violates Rule 11(b) may, after notice and a reasonable opportunity to respond, be sanctioned for such violation. *See* Fed. R. Civ. P. 11(c)(1).

A motion for sanctions may be filed by an opposing party. Fed. R. Civ. P. 11(c)(2). When an opposing party seeks sanctions, Rule 11 requires that it must first serve a motion without presenting it to the court. *Id.* Rule 11(c)(2) creates a safe harbor for the offending person, and provides that a motion for sanctions may not be filed "if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." *Id.* If the lawyer whose submission is challenged by the motion refuses to correct or withdraw the challenged submission, then "liability may be imposed if the lawyer's claim to have evidentiary support is not objectively reasonable." *In re Pennie & Edmonds LLP*, 323 F.3d 86, 90 (2d Cir. 2003). A court may also, on its own initiative, "order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b)." Fed. R. Civ. P. 11(c)(3). An order on the court's own initiative lacks a safe harbor provision, so sanctions under Rule 11(c)(3) require proof of a correspondingly higher mental state. It is not enough that an attorney's factual claims were "objectively unreasonable"; instead, sanctions

should issue under Rule 11(c)(3) "only upon a finding of subjective bad faith." *Muhammad v. Walmart Stores E., L.P.*, 732 F.3d 104, 108 (2d Cir. 2013). "Imposition of sanctions under a court's inherent powers [also] requires a specific finding that an attorney acted in bad faith." *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009). Courts have defined the "bad faith" standard in a variety of ways: "as requiring 'deliberate fraud or wrongdoing,' 'evidence of what might be referred to as "frivolous-plus,"' and 'direct or circumstantial evidence that counsel knew that the argument was without merit,' among other[] formulations." *Edison Coatings, Inc. v. Freedom Cement, LLC*, No. 15 Civ. 2726 (LAK), 2017 WL 462339, at *2 (S.D.N.Y. Jan. 30, 2017) (collecting cases).

The Petition repeatedly asserted that Gregorio was detained without a warrant and predicted that the Department of Homeland Security ("DHS") would produce an after-created arrest warrant and claim that the arrest was based on it. *See, e.g.*, Petition ¶¶ 11, 13, 21, 22, 81, 82, 163.[1] Respondents' uncontested evidence showed that a warrant was issued before Gregorio was detained, and that the detaining officers personally served Gregorio with the warrant and read its contents to him in Spanish before transporting him to a detention facility. *Gregorio*, 2026 WL 2110876, at *3. Gregorio has now attested under penalty of perjury that the ICE officers who took him from the Putnam County Jail on May 18, 2026, "did not show [him] or give [him] any documents to keep." Gregorio Decl. ¶ 6. He further confirms that he shared this information several times with counsel. *Id.* ¶ 2. In general, "an attorney is entitled to rely on his or her client's statements as to factual claims when those statements are objectively reasonable." *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1329 (2d Cir. 1995) (citation modified). In light of Gregorio's

[1] The Petition's paragraph numbers restart at page 3. All paragraph citations to the Petition in this Opinion and Order are to the second set of paragraph numbers.

testimony that he informed counsel that he was not shown any arrest warrant, the Court does not find that the assertion that Gregorio was detained without a warrant was made in bad faith.[2]

The Petition also represented that Gregorio was seized "on the street." Petition ¶¶ 27, 111, 121, 133. In fact, ICE took custody at the Putnam County Jail. *Gregorio*, 2026 WL 2110876, at *3. Counsel acknowledges this mistake and claims that "[i]solated references to an arrest 'on the street' . . . were obvious template or typographical carryovers." Response at 17. The Court credits this account as a descriptive matter. On May 4, 2026, Mr. Musa-Obregon filed a petition for a writ of habeas corpus on behalf of another client, in which he raised the issue of whether DHS can "racially profile and stop a Guatemalan man on the street because of his appearance, question him about national origin, seize him, search him, and arrest him without probable cause or a valid warrant." *Tzul Tzul v. Blanche*, No. 26 Civ. 3673 (LJL) (S.D.N.Y. May 4, 2026), Dkt. 1 ¶ 89. Indeed, most of the language in this Petition appears verbatim in other habeas petitions counsel filed around the same time. *Compare* Petition, *with Tzul Tzul*, No. 26 Civ. 3673, Dkt. 1, *and Ramirez Luna v. Blanche*, No. 26 Civ. 3605 (NSR) (S.D.N.Y. Apr. 30, 2026), Dkt. 1. It therefore seems likely that the references to an arrest occurring "on the street" were the result of a failure to

---

[2] Counsel also devotes a substantial portion of his Response to explaining why he did not violate Rule 11(b) by representing that Gregorio was detained without an individualized custody determination even though ICE conducted an individualized custody determination on May 19, 2026. Response at 12-16. The crux of his argument seems to be that whether there was a "meaningful, individualized, and contemporaneous custody determination" is a mixed question of fact and law, and counsel was permitted to challenge whether the determination was meaningful or timely. *Id.* The Court does not accept this explanation. The Petition represented that DHS was incarcerating Gregorio "indefinitely without an individualized custody determination." Petition ¶ 26. This is a factual assertion that no determination had taken place, not an argument about the adequacy of any determination. Still, sanctions are not warranted based on these representations. While counsel inexplicably does not raise this point, the Petition was filed on May 18, 2026, Dkt. 1, before the May 19, 2026 determination. Although the Court questions whether Gregorio was served by Mr. Musa-Obregon's decision not to file a reply addressing the developments that took place after the Petition was filed, counsel's representation had evidentiary support when it was made on May 18, 2026.

properly adapt a template to the facts of this case, rather than an intentional attempt to mislead the Court about the nature of the detention.

That these errors were the result of template carryovers does not end the inquiry. To be sure, "there is no reason for counsel to reinvent the wheel in every case." *L.M. v. New York City Dep't of Educ.*, No. 21 Civ. 11175 (AT) (BCM), 2023 WL 2872707, at *11 (S.D.N.Y. Feb. 14, 2023), *report and recommendation adopted*, 2023 WL 2495917 (S.D.N.Y. Mar. 14, 2023). But reliance on a template does not relieve a lawyer of his obligation under Rule 11 to conduct a reasonable inquiry into the facts of the present case. Courts have warned lawyers that they may not file cookie-cutter pleadings without "developing the facts necessary" to support their arguments. *Zinnamon v. Satya Jewelry II, LLC*, No. 23 Civ. 781 (VEC), 2023 WL 3511123, at *3 (S.D.N.Y. Apr. 28, 2023). In fact, courts have specifically and repeatedly warned Mr. Musa-Obregon himself against "[t]his kind of cut-and-paste lawyering," *Tambriz v. Blanche*, No. 26 Civ. 4247 (JMF), 2026 WL 1662129, at *2 (S.D.N.Y. June 9, 2026); *see Tuba Pulla v. Lyons*, No. 26 Civ. 2682 (MKV), 2026 WL 906251, at *1 (S.D.N.Y. Apr. 1, 2026).

Counsel suggests that these errors were not "material" because the "warrant and custody arguments were the same whether ICE assumed custody at the jail, on a street, or at another location." Response at 17. The errors were not so minor as that. These template carryovers paint a picture of a petitioner who was "detain[ed] on the street based on hunch, appearance, or general suspicion," and suggests that he may have been stopped "based only on ethnicity or appearance," Petition ¶¶ 121-22, 124, 134, a far cry from what the evidence shows. That portion of the Petition invokes Fourth Amendment law governing investigatory stops, *id.*, without explaining how, if at all, that body of law applies where ICE assumes custody over a person who was already detained and whose identity ICE already knew. What ultimately persuades the Court that sanctions are not appropriate here, however, is that elsewhere the Petition's own factual narrative accurately placed

Gregorio at the Putnam Correctional Facility when ICE took him into custody. *Gregorio*, 2026 WL 2110876, at *1 n.2. This indicates that counsel knew where the arrest occurred and that the references to an arrest "on the street" resulted from careless editing rather than from a failure to investigate the facts or an effort to mislead. The Court might well have reached a different conclusion had the "on the street" allegations been the Petition's only account of the arrest.

* * *

For the foregoing reasons, the Court declines to impose sanctions. Counsel is cautioned, however, that the patience of judges is not unlimited. After the warnings in *Tambriz*, *Tuba Pulla*, and now this Opinion and Order, Mr. Musa-Obregon should not expect judges to attribute further template-driven misstatements to mere inadvertence. If counsel's volume of lengthy, boilerplate petitions does not permit him to tailor each one to the facts of a client's case, that business model is not consistent with Rule 11.

SO ORDERED.

Dated: November 23, 2026
New York, New York

JOHN P. CRONAN
United States District Judge